May it please the court. Kristen Davidson on behalf of Mr. Aguilar-Torres. This court can craft its own case processing procedures, and it did. The court's streamlined briefing procedure invited Mr. Aguilar-Torres to raise his foreclosed issue in a letter brief and to file a motion for summary affirmance. Following that procedure does not destroy Article III jurisdiction. A federal criminal defendant challenging his conviction or sentence on direct appeal has and retains a live case or controversy because the district court's judgment causes a concrete injury and the challenge is capable of judicial resolution. How that power is exercised is answered by stare decisis and the rule of orderliness. The claim that Mr. Aguilar-Torres wants nothing on appeal or from this court is wrong. It is very clear from the merits in his letter brief that he wants relief from his criminal sentence. He wants Almendares-Torres revisited, and he wants that overruled. Ms. Berenger, I mean, Ms. Davidson, this is Judge Jones. I gather you didn't ask for any reserved time, correct? I asked for... Oh, yes. Please proceed. All right. Yes. I wonder, when was the last time that you talked to Mr. Torres or Aguilar? We keep our clients informed as things change. Well, he was let out of prison in October, November, wasn't he? He was deported this past July 2024, but he's challenging the length of supervised release imposed and his deportation... I'm aware of that, but if he's deported, supervised release is really sort of irrelevant, isn't it? No. His sentence, his claim on appeal is that his sentence was unconstitutionally enhanced. Under 1326A, the court could impose one year of supervised release, but based on judge-found facts, the court imposed three years of supervised release. Well, I understand that, but if he's in Mexico, he's not really reporting into a probation officer regularly, is he? And the only way he would be, other than by long-distance communication, is if he illegally re-enters again, right? Both the Supreme Court and this court have held that deportation alone does not move an appeal, especially when it's the term of supervised release that's being challenged. I understand that. The only point I'm trying to make is that this is all quite hypothetical if the fellow stays in Mexico where he belongs. And I don't think our court ought to be dealing in hypothetical controversies. Well, it's very real to him, number one. And number two, the larger issue here is whether or not we can follow the case-processing procedure outlined by the court or risk following, destroying Article III jurisdiction if we do follow that. Well, I noticed that your brief attributes the reason you're following it, at least in part, to something that I wrote a few years ago, that these Almendares-Torres things were close to frivolous. And I retract that statement now in light of the Erlinger opinion for what it's worth. We definitely appreciate that clarification, Judge Jones. The court has provided a means of raising foreclosed issues in a streamlined way. And one of the reasons we took the court up on that invitation is because we do care to preserve this claim, just in case, and there's nothing wrong with doing that. And it is arguable on the merits. One thing I really wanted to impress in the briefing is that whatever procedure the court wants us to follow, that's what we'll follow. And so if it is simply a merits brief acknowledging a foreclosed issue, that is what we'll do. But if the court keeps the streamlined procedure, there's nothing wrong with that either. The court can craft case processing rules that do not destroy jurisdiction. And following it, in this case, didn't and wouldn't. One of the reasons that we took the court up on the invitation to raise foreclosed issues in this manner is they typically were decided more quickly, which meant clients were able to more expeditiously preserve their issue for appeal. Counsel, court instruction aside, the notice from the clerk's office aside, what is your best case for the proposition that a litigant can satisfy Article III's redressability requirement by stating that some other court can redress the injury? Well, there's no case that's been cited that says redressability is destroyed by obeying precedent. I think the best case, if I can choose just one, is Spencer v. Chemna, which very clearly identifies that criminal defendants who are challenging their judgment imposed by the district court meet all of the requirements for retaining a live case or controversy. Article III jurisdiction, whether this court has power, meaning this case falls within its constitutionally prescribed sphere of power, is really not the issue here. Because I don't think there's any doubt that the federal court does have Article III power to hear a criminal defendant's challenge on direct appeal to conviction or sentence. But you agree that we can't provide the relief that your client seeks, correct? We're duty-bound to apply the existing precedent, and it's not our precedent, it's the Supreme Court's. Affirmance is the remedy this court has said it will grant on this issue. So what is causing the injury is the district court's judgment. Affirmance in this court is what the rules of orderliness and stare decisis tells us we follow in order to work our way to the court of last resort. This court, the Supreme Court, both have said unequivocally and repeatedly that Almentares-Torres is on point, and it won't be revisited until the Supreme Court decides to do that. So, affirmance is not that Mr. Aguilar-Torres wins on appeal. He doesn't. He asks for the only relief this court says it will grant to continue the harm so he can reach the court of last resort. So, it is not necessarily your typical procedure, but this isn't a typical procedure. This is a case-processing procedure the court's crafted to allow litigants to preserve foreclosed issues. Do you know if any other circuits have crafted a process like this one? I have found no circuit that has identically worded the process as the Fifth Circuit has. Well, anything similar. Anything similar like what we have done here and that you've done here. Both the D.C. Circuit and the Third Circuit have in either their handbook or in their IOPs procedures for summary disposition and outlines when it's appropriate and how it's taken. And citation to both the D.C. Circuit's handbook and the Third Circuit's IOP are in the supplemental brief, I believe, on page 20. So, there are... By an appellant. Excuse me? By an appellant. It does not... Summary procedure by an appellant. Is that correct? It is available to opponents. It is not specific to one party in the way that both the D.C. Circuit and the Third Circuit have crafted it. So, either party has that procedure available to it. Ms. Davidson, are you aware that this procedure has been used in cases other than Almendara's Torres? Yes. And I cite in the supplemental brief a handful of cases where this procedure has been used by defendant appellants to preserve foreclosed issues. Don't you think that poses risks vis-a-vis something like Anders? No. Anders is a different animal. There's nothing wrong with preserving a meritorious but foreclosed issue. The Anders process is when we can find no non-frivolous issue on appeal and move to withdraw. That ends the case. It doesn't preserve an appellant's rights in any meaningful way. It ends the appeal. It is moving to dismiss. Recently, this procedure was used to chat on constitutionality of 18 U.S.C. 922.0, which probably means there was a Fifth Circuit. I haven't looked at that myself, but we all know that the definition of machine gun is uncertain right now. And why do you choose to say that we don't even want to argue it in the Fifth Circuit? Another case is a challenge on a career offender enhancement on a drug conspiracy. I can't speak to those. If the court believes that the summary disposition is not appropriate, we ought to deny them. But the whole point of summary disposition is to make it easier for us so that we look at them on the screen and automatically reject them. Whereas if you just filed a notice of appeal and the government then moved for summary affirmance, then you'd have to think about it a little more, perhaps. If that's the procedure the court wants and the only procedure the court wants, I have no problem with that. The streamlined procedure was available to Mr. Aguilar-Torres at the time that he filed. And this was the issue raised, which is foreclosed. But there's nothing wrong with preserving that issue. The question is whether or not this streamlined procedure kills Article III jurisdiction, but it does not. Separate question. Oh, I'm sorry. Judge Higginson. Ms. Danton, yeah, because obviously it's difficult for me to see that your attorney was inept or that we destroyed jurisdiction when we told you to file it as you did. But I'm not sure this is just easily cabined to our instruction and whether we should correct our own error. Because when I – tell me if you think I'm wrong. The government and the defendant very frequently in criminal justice matters after a guilty plea with an appeal waiver, they agree to summary disposition. In other words, defense counsel say, just as here, summarily affirm. We acknowledge it's controlled by the appeal waiver. So there's non-contentious jurisdiction for the courts. We do it all the time. And as my knowledge, every single circuit has said that doesn't destroy the power. In fact, in all those dismissals, don't we look to confirm that the appeal waiver was knowing and voluntary? We lost you. Can you hear me? Yeah, now I can. Sorry. I think what you're referring to is how we address it in an Anders. So at that point, if there is – No, I'll just – just because of time, I'm clarifying. Defendant – government in a motion stage moves for summary affirmance or dismissal based on an appeal waiver. Defense counsel says, you're right. I join that. Or the defense counsel even moves initially for summary affirmance because of the appeal waiver. When we do dismiss, and when all other circuits dismiss, they've explored that the court's power isn't destroyed. In fact, the court always still confirms the appeal waiver was knowing and voluntary. It could have a preclusive effect, but it doesn't go to the court's Article III power. Do you think that's an analogy that's appropriate here or not? Yes, I believe so. In that scenario, when the government – We can't hear you. Can you – we cannot hear her answer. Okay. Check, check. I'm sorry. For some reason, it cuts out after someone else talks. But I believe that is a fine analogy, Your Honor. When the government moves – I mean, the majority panel opinion brought this up as well. When the government moves because an issue is foreclosed, so the government moves for summary affirmance, the majority panel said defendant concedes as they must that the issue is foreclosed. And that doesn't destroy Article III jurisdiction. I agree with that. I think what the implication is, if following the court's streamlined procedure destroys Article III jurisdiction, is if defendant appellants are in a position where we actually should say nothing if asked to confer. I think it creates a difficult scenario when the mirrored procedure is employed by the government. So I think your analogy is correct. The parties agreeing to the current state of the law, especially when it's so clear from the Supreme Court and this court, what it identifies as controlling precedent. Agreement as to how the court's authority is exercised does not go to Article III jurisdiction. It goes to stare decisis and orderliness. Thank you. Unless someone else has a question, I think that your time is – you saved time for rebuttal. Does anyone else have a question? Okay. Thank you, Ms. Davidson. We'll now hear from Ms. Berenger. May it please the court? Elizabeth Berenger on behalf of the United States. Please tell me if I'm lagging because I've had some trouble with that this morning. But there's really two points of interest that the government has in this case. And one is that we believe there's jurisdiction because the defendant wants his sentence vacated and we want to enforce it. And that is the marching orders we have from both Vaughn and Berenger. And the second point that we have of the context of this case is very important. The defendant did not file a merits-free speaking affirmance. He did not seek to dismiss his case. He's not agreeing at all that his sentence should be enforced. He's asking for a summary affirmance to this court's procedure to preserve a foreclosed claim. And that is important both in the context of seeking further review and also due to the state of the law. He must in order to not procedurally default. So in that context... Counsel, can I stop you on the procedural default thing? What is your theory for how Mr. Aguilar-Torres could get some form of post-conviction relief by doing this, literally anything about Aguilar-Torres here? So if he's not the guy that's going to get on the under arrest for his return, what would be your theory as to how he would get some relief after that? Sure. Well, it's difficult in his case. He's already been deported and he's on for the supervised release. As you all know, it's sort of legal fiction unless he returns. But we're not just talking about this case. We can talk about other cases. I have defendants from when I started with the department in 2005 that are still in prison. And this rule could impact them that after they filed their second and successive petition and there's no futility defense, they should have raised it. And all of a sudden the court composition changes. And yes, it's a hypothetical, but it doesn't mean that defense counsel in their own calculus doesn't decide to preserve error for that reason. They have to preserve it now. Sorry, let me be clearer. I'm asking in light of ring and in light of the Supreme Court's decision in Edwards. I'm trying to understand what would be the theory by which this could operate retroactively. That is overturning on interest for us. What would be the theory? OK, well, I don't know that I'm up on that. But those particular cases right now that I can envision a situation, maybe not in this case, where all of a sudden the Supreme Court decides that you can't enhance the sentence. It would be a sentencing thing. It would have to probably arise in NACA. So maybe not this case. Maybe this is not the great case to make the point about procedural default. But the same principles apply that if you don't let people preserve error, it would have. You have to let people preserve error. What would be your what would be your case for the proposition that you have to say, I would like to have a mentor as far as overturned to the Court of Appeals in order to preserve it for the Supreme Court to be able to overturn it and later Supreme Court proceeding? Yeah, I don't have a case for that. And also, this is a plain air because it wasn't me below as well. That's an additional problematic wrinkle for Mr. Council council when the government files a motion for summary affirmance, it's invoking the power of the court. It's asking the court to do something in the government's interest. It's asking us to reject a position taken by the plaintiffs, whether it's one that's still in doubt or still subject to controversy or one that has been foreclosed by Supreme Court precedent. Why didn't the government file the motion here? Was it simply a matter of defense counsel got to it first or was there some particular reason or discussion that facilitated the motion in this case where the defendant invokes the power of the court to defeat the defendant? So, until Congress came out, the government was always affirmative filing promotion for summary affirmative cases. And as the onboard has pointed out, not just in a friendly cases, but in other cases as well. And after that case came out, the federal public defender in the Western District of Texas began proactively filing them with our non injection. In some cases, in a friendly cases, mostly, I don't see a lot of, I mean, I am only one attorney, but I don't see affirmative motions by defendants, other than a friendly. And maybe I'm wrong about that, but I see a lot of government motions on 922 G, especially G5 G1 facial challenges. But I don't see. I don't see defendants motions for summary on those issues. Did that answer your question? Counsel, I'm sure. Counsel from the federal public defender's office in her supplemental reply brief. She says that she doesn't think there is such a thing as a felon standing. She says they're standing in the district court and then there's mootness and that's it. Do you agree with that statement of the law? I didn't interpret her comments that way. I interpreted her comments as saying there's something different between. And having initial standing and then when it goes on to appeal that the mootness inquiry is different that there. And so I sure I'll read it to you. This is from page 2 of the brief. Amicus sets no authority that demands a new and separate disability requirement for each quarter of the moment. Indeed, the Supreme Court has undercut this claim, citing late law from 2000. So that's her position. I'm curious. Does the United States government think that there is such a thing as appellate standing? I think there is appellate standing, but I think that once there is initial standing, the mootness inquiry on appeal is a different analysis. And I also want to point out that, I mean, you know, from class and Colin, this is not a neat and spiky doctrine. These are looking in specific facts and whether there's a remedial ability of the court. And what's the line versus Cohen is has uncertain and shifting contours. So we're not applying a mathematical scientific analysis of this. We're looking at the just as the personal stake in the outcome. And this defendant has a personal stake in the outcome. And I know that we're applying doctrine from civil cases. But this is a criminal case. And it is fundamentally different than a lot of the cases that deal with standing and addressability and the appellate court, which really deal with the effect on third parties and not the effect of a high fair feel. Sorry to say this in vertical rule of orderliness. And I'm sorry to say this. So it's a lot of those cases. You're just not a great fit. And all you have to do. And when there's not a great fit, go back to principle. And this is not going to be an advisory decision by this court. This court's decision in this case has real meaning for this defendant. Ms. Ferenger, I hate to interrupt, but I thought you acknowledged just a few minutes ago at the outset that this defendant has been deported. Supervised release is therefore pretty much meaningless unless he comes back illegally into the United States and gets arrested again. So it's one thing to argue about this in hypothetical terms, but it's quite another in the reality of this case. Don't you agree? There's the practical and the legal. And Ms. Davidson is absolutely correct that there is still a criminal sentence out there. And that is the only sentence is supervised release. Yes, and that's enough. Well, that's a little very strange in terms of an opinion from this court on a deported alien. Ms. Ferenger, do you recall signing in a footnote Professor Fander's scholarship? Yes, I do. Could you elaborate a little bit? Are you saying that a controversy still exists even when the parties have agreed to as a case outcome? Or are you saying that defendants move all the time jointly with the government for summary affirmance when there's an obstacle like stare decisis or like an appeal waiver? So we very frequently at this inferior intermediate court stage in criminal cases do still have jurisdiction even if there's an obstacle both parties are agreeing should cause summary affirmance. How are you applying Fander's non-contentious jurisdiction concept? I don't know that the government buys off on that. I think that I put him for the proposition that his research has shown the reason for the adversity requirement was for collusive cases. And so I thought that that is important to keep in concept of the broad principles. But I think that we can look no further than Windsor for the second part of your question. And I don't know if I'm interpreting this correctly. We want to enforce the judgment and the defendant does not want us to enforce the judgment. And that we have a different interest in the ultimate outcome. And that case is the most like this case than any other case is Windsor and Chadha. Where the government a litigant lost below and then when they go to the appellate court they're asking to affirm the judgment that they lost. Even aside from context. Even if we don't look to the summary affirmance where the government does not truly believe that he is requesting that the case affirm in the sense that the case is correct. He's invoking a court summary. Like when you go on ECF and you file a motion for summary affirmance there's no option for summary disposition. It's only summary affirmance. That's the only option for a litigant to file in the Fifth Circuit. Unless you do a motion for summary judgment. But it's sort of couched this way. And it may be a problem of language. And much like Ms. Davis and Ms. Sainz. The government is not wedded to this plan. If the court and its discretion wants to change it and not allow defendants to file we go back to the old system. And I don't know that one additional motion filing for the court that takes away probably their time from cases that need more tracking as they talk about in Grondike. But we're not wedded. We're not wedded to whether the defendant needs to file it or the government needs to file it. I'm just saying in this case the defendant's use of those procedures didn't create a jurisdictional problem. Thank you. Thank you very much. Thank you. We will now hear from Mr. Mortara who has requested three minutes of uninterrupted time. Thank you Chief Judge Elrod. And may it please the court. My friend the public defender as Judge Oldham pointed out appears to be arguing that appellate standing is prudential. And I think I heard something similar from the United States just now. I've heard many things from many officers of the court in my career. But this one goes into the records book. The Arizonans for Official English Court said the standing Article 3 requires must be met by persons seeking appellate review. Just as it must be met by persons appearing in the courts of first instance. And that's not the only type of statement you can find like that from courts all over the country. My friend from the Department of Justice is telling this court in the supplemental brief that redressability doesn't need to be a sure thing. It just needs to be a likely thing citing Utah v. Evans. First Utah v. Evans may have been substantially undercut by Halland which adopts Justice Scalia's Franklin formulation as law. Which was the basis of Justice Scalia's Utah v. Evans dissent. But second I can name at least three dispositions that do more for Aguiar than affirmance. Which is in fact the single disposition that does the least for him. Far from likely helping he has requested the single most harmful disposition. Here are the three. Obviously reversal or vacater is really good for Aguiar Torres notwithstanding Judge Jones' comments about the fact that he's not in this country. I'm not going to count those as one. So let's put those to one side. Here's a second one. Dismissal for lack of jurisdiction is better than affirmance. Why? Because this case has now occupied the attention of 17 members of the United States Court of Appeals for the 5th Circuit. And thereby might grab the attention of the Supreme Court of the United States if the case is dismissed for lack of jurisdiction. And maybe just maybe Aguiar and the federal public defender could get the court to grant on QP2 overrule Almendarez Torres. It's way better for him. But here's a third. An indefinite stay is better for Aguiar Torres than affirmance. I heard some really odd things in the two previous discussions. One is that this is a good procedure because it moves Aguiar's appeal more quickly. That's terrible for him. Aguiar's chances of getting Almendarez Torres overruled are essentially zero. Once his case goes final, as Judge Oldham was indicating, he can never, ever get relief if Almendarez Torres is overturned on appeal because of Edwards, because of Ring. And this procedural default discussion, no. The only kind of case that can be retroactive to cases on collateral review now are those falling within the so-called substantive exception. Well, those people are innocent and they qualify potentially for the miscarriage of justice exception to procedural default. A stay would allow Aguiar Torres to wait around until somebody else got Almendarez Torres overruled. And then he would still be on direct appeal and be able to take advantage of it. So why don't we just let him ask for a stay? He asked for affirmance. The single worst thing, this case needs to be dismissed for lack of jurisdiction. If he moved to withdraw his motion, what would that mean for this case? If someone were to prompt or spur him just to say, never mind, and withdraw his motion, what would that mean? Given his deported status and everything else. Well, given his deport, I don't know where to go on the deported status. As to the latter, I hate to be the propeller-headed formalist again, Judge Willett, but I'd say it's maybe a little bit different if he has to withdraw it than if you deny it or effectively allow him to withdraw it. I'm concerned a little bit with the obvious negative effects of this court having induced Aguiar Torres' counsel to file this type of motion through procedures. And of course, procedures and the ECF system do not trump the United States Constitution. But there is a little bit of culpability on the part of the court here. So my heart is telling me that we should let him withdraw the motion. But as you know, in my brief, I took no position on this question. And I still hesitate to take one. I have another question. You alluded to it in your answer. Does this court have the authority, now that the intermediate panel decision has been vacated, the motion is before the en banc court? Does the en banc court have the power to deny the motion for affirmance? Give me a second. I believe the en banc court only has the power to determine that it has no jurisdiction and has to dismiss the case for lack of jurisdiction. He filed a motion. It's pending in front of us. What is it about that motion that wrenches from our jurisdiction to deny the motion? The way I would think about this is, if you think about old writ of error practice, what Aguiar-Torres has filed is effectively a complaint in error. We don't have that anymore. We have a notice of appeal. So when somebody files a notice of appeal and then files their merits brief, but at the end of it they say what they want you to do, that effectively is what the old complaint in error was. And this person has filed a complaint in error that says at the end of it, I would like to lose. No, he's not asking us to dismiss. He's not asking for that relief. And your position is we should dismiss for lack of jurisdiction. He's not asking for dismissal. He's recognizing that we won't grant him the relief he wants. And he's asking us to expeditiously do what we're going to do anyway, which is affirm, so that he can go to the Supreme Court. Now back to my question to you. Does this court have Article III jurisdiction to deny the motion for summary judgment, summary affirmance, and tell him to file a brief? Because he asked for affirmance and the relief he is requesting does nothing to redress his injury, this court must dismiss and only have jurisdiction to determine its own jurisdiction and therefore must dismiss. That's my answer. That's what I thought. What did the INS ask for from the Supreme Court in Chadha? Well, the INS still wanted to deport Mr. Chadha. So they were asking for an affirmance effectively on the basis that they said we would like to deport Chadha if the House of Representatives order is valid, but we don't think it's valid. So we would like to deport Chadha, but we don't really want to deport Chadha. That's why I referred to it as the disunitary executive. INS is topside. I'm sorry to interrupt. It's very quickly. If I recall, INS is topside in the Supreme Court. In Windsor. Right. U.S. is the same in both Chadha and Windsor. They're both topside. They're both seeking, initiating proceedings in the Supreme Court of the United States. And in both cases, they're seeking affirmance. Is that correct? That is correct. I'm so glad you asked the question, because I really do think that the United States, as sovereign, has a special status, maybe even special as it pertains to the Supreme Court, when it comes to seeking clarifications of the law. We don't think, and I've had this come across in my practice, we don't think the United States is like a Massachusetts versus EPA. I'm sorry to interrupt. I just wanted to make sure I understand it. Massachusetts versus EPA talks about special solicitude. Some people already feel that decision for that very reason. You think that we should import that kind of analysis here? No, I think the United States basically has it, and I'll tell you exactly why. We don't ask whether the United States has suffered an injury in fact when it files a lawsuit trying to enforce the Voting Rights Act or the Americans with Disabilities Act. When Congress has granted the sovereign a cause of action to enforce federal law, we don't ask whether they've been injured. We don't do that in criminal cases either. It's a very small step to go from there to the sovereign having an interest in the uniform statement of what federal law is when it pertains to enforcement. So the IRS was enforcing the tax laws in Windsor, and the INS was enforcing the immigration laws in Chadha. And I do think the United States might have a special status going to the Supreme Court petitioner seeking affirmance because they want to seek clarity and uniformity as to the law. The only problem I have, Judge Ho, is that there was no circuit split in Windsor. So the only reason you don't see this in my brief is I didn't want to deal with Judge Ho asking me, well, there was no circuit split in Windsor. This interest in uniformity, it doesn't totally get me there on Windsor, but it might. I mean, I guess they might not want to have different rebate rules in the Second Circuit than they were going to have down here in the Fifth, because I would assume maybe the Fifth Circuit wouldn't come to the same conclusion as the Second Circuit about DOMA. But I do think the United States might have special solicitude. It's not an EPA versus Massachusetts thing because, after all, the United States is our sovereign here in federal court. But Aguiar-Torres is not the United States, and Windsor and INS or Chadha, Windsor in particular, should be confined to their facts. Can you say more about that? Why do we confine Windsor to the facts? What do you mean by that? Well, because I can think of at least three reasons. One, as I pointed out in my brief, there is a sort of quasi-appellate injury that President Obama was experiencing in Windsor. He didn't want to pay the rebate unless the Supreme Court told him he had to. So he could at least demonstrate that he had some injury from the Second Circuit's ruling, which is to say the Second Circuit's ruling wasn't enough to get him to pay the rebate he wanted to pay. That's the disunitary executive theory. The second theory is the one I just articulated, which is that the United States has special status, and therefore we should confine Windsor to cases where the United States is the petitioner seeking affirmance. And the third is that Windsor is wrongly decided. And if I were an inferior court judge, I would look at Windsor, say that's wrongly decided, and confine it to its facts or the narrowest version of its holding, not extend it. I'm not an inferior court judge, however. Right. When you say Windsor was wrong, I assume you're referring to the merits analysis. But we're obviously talking about the jurisdictional analysis here. Both. I'm sorry.  Okay, but are we allowed to do that? I guess according to your section three of your brief talks about underruling. Is that sort of your point here? Yeah, I absolutely think an inferior court judge can look at a Supreme Court opinion and say, I don't think that's correct, therefore I'm not going to extend it. I will obey it. Isn't that what Abraham Lincoln took as his position on Dred Scott? If you say so, Judge Jones, I'm sure it's the truth. Could I just ask two questions about the logic of your rule applied to other aspects of criminal appellate jurisdiction? First question is, what redress does the circuit court give when there's an unopposed COA filing? Doesn't that just allow the litigation to continue? Well, it's funny you should ask that, Judge Dickinson. Cohen v. United States, the case that held that a COA proceeding is its own case in the court of appeals, and therefore the Supreme Court had jurisdiction on certiorari, is wrongly decided. A certificate of appealability is not a case in the court of appeals. It is, in fact, a part of the appeal itself. Okay, I was wondering if you would have to have that case be wrongly decided. I don't think so, because we can confine Cohen to what it's talking about. But Justice Scalia explored this exact issue, didn't he? I don't remember. I tell my students Cohen is an atrocity. I guess I would say that keeping within the confines of Cohen, a motion for a COA that's presented by the appellant, the prisoner, is seeking the relief of the certificate itself. And the certificate itself, if that's its own case, is what Cohen says, the redressability, the injury that's being redressed is, I would like to be able to appeal on the default rules, I can't. And if you give me this piece of paper, I can. Therefore, there's redressability. I mean, it all sounds, as I've said a couple times about other things, very silly. But that's because Cohen is very silly. I've now articulated an answer that at least gets us there. I'm learning from you. That's very sophisticated, and you teach it, and it wasn't in the briefs. So that's impressive, and I want to think about it. The other area that you heard me concerned about asking your friends is the world of guilty pleas and appeal waivers. I think I'm right, Judge Bidey, for the Montgomery Circuit and our court, we often grant joint motions for summary affirmance, not starting with the scientist, but based on the contract. And the courts then still exercise their power to confirm their knowing and voluntary. And then they dismiss them for preclusion reasons, but not jurisdiction. Am I right with all that, and does your rule interfere with that? I don't know if you're right with all of it, but because you said it, I'm going to give you the same courtesy I gave Judge Jones and assume that you are. This one was tapping my head a little bit during the last presentation when you raised it. So I want to make sure I understand a little bit. So you have a guy who pleads guilty and he has an appeal waiver. Then somehow somebody files an appeal for him. We will be required. Our local rules, again, the defense attorney calls the government. The government says, I want to enforce. My knowledge is our court, like all others in the Ninth Circuit in particular, says, you know, we'd be happy if you do this jointly with the defendants can do it primarily at first. Anyone, if you acknowledge the appeal waiver, but then the court still confirms. When we dismiss, we confirm that it was knowing voluntary, knowing effectiveness. See what I'm saying? Yeah. I mean, I got it. I'll say two things in response. One is it looks a lot like an Anders proceeding, which is what my colleague, my friend said. But the other thing I'll say is I don't subscribe to a course of performance view of the United States Constitution. And that procedure, it smells a little bit to me. It's not my area. So I really don't want to. I'll tell you confidently. Hone is wrongly decided. I won't tell you confidently that something wrong is going on there. Okay. Thank you. Mr. What if it was styled as a notice? Notice that we are ready for your circuit. You've told us this is what you do. We strongly and vociferously object to Almendora Torres. We've written extensively about it in our first briefing in the case. We preserve that. We believe in it. You were wrong. The Supreme Court is wrong. Everyone's wrong. We're right. But we are giving you notice of this. Would that still be a problem? Or is it the label that's a motion? Or would even if you had that extra language, would it cure the problems with the motion? This is the worst part about this case, which is now occupied all of your time. 17 judicial hours just today. Yes, I think it would cure the problem. And the fact that there's not a drop down for a motion for summary adjudication instead of affirmance. I mean, it's the tiniest thing in the world. And I recognize that's a criticism of the argument that I'm making. It was offered by the United States. There's this cool Harry Potter quote in their supplemental brief. But the reality is that you can ask for reversal or vacater. And you should. My colleague from another state who was the court-appointed counsel in this Hobbs Act case, the reason I brought that up is I was clerking at the court. This was a particular flogging horse for my old mentor and employer, Patrick Higginbotham, was whether the Hobbs Act extended to local robberies. And look, and lo and behold, you find people just a few months ago able to file merits briefs that say, I understand this is all foreclosed by precedent, but please reverse. And I know it's a magic words requirement. But the danger of not having this magic words requirement is a whole cast of unknowns. I don't know what effect this has on what crafty appellants might do. And I don't know what effect this has on Anders. And so why not just make them ask for the thing here? I know it's no big deal in this case. It's definitely no big deal in this case. I don't know what will happen in other cases. It seems to me the conservative minimalist approach is just say the magic words. Can I follow up? I'm sorry, please. We could change our procedures, and that's not the point for y'all to decide today or for us to decide today. Do we not have the power to read separate and apart a document for magic words? Can we not look to what the true meaning of the document is? If it has the bad magic words but also contains the robust defense, can we construe it? Don't we have judgment to construe things that are filed as not really asking for the title of the motion? So as I understand your hypothetical, the document itself doesn't have the magic words, but we can see what's going on, which is effectively... It has the word summary affirmance, but says... It has the wrong magic words. It says conjointly, it's titled summary affirmance, but it says also we don't think summary affirmance is right. We think we should win this case today. And we hate that we're having to go through this years and years, and my supervised release may run out before I even can get to the Supreme Court. And isn't this a shame? But you're making us do this, and we do this under protest. But by golly, we do this nonetheless. And so it has the magic words that we think are fatal, but also contains the robust discussion. Do we have the power to look at the true meaning of the document and say, well, despite the magic words, it is a rigorous protest, and so the jurisdiction is not destroyed? So I'll answer the question as appellate advocates are supposed to. No, you do not have jurisdiction. And if you'll indulge me, I'll explain. I was troubled by this, too. So when I got the assignment, I initially thought this adversity stuff, Jim Fander, I don't want to have to explain why every time parties agree there's a problem except when there isn't. So I focused on addressability, and my first thought was exactly what yours was, Chief Judge Elrod. So I called up Jonathan Mitchell, and he said, but the problem is is that it's what the relief being requested that the Supreme Court asked you to focus on. It's not me saying that the magic words have to be found in the brief somewhere. It's got to say reverse or vacater. It's the relief being requested that is the touchstone of addressability. I'm not sock-puppeting Aguiar-Torres and saying ask for affirmance. Nobody should. He needs to request relief that addresses his injury. He didn't do that. So in the brief that you described, there still would be no request for reverse or vacater, and there would still be no jurisdiction. I have on the magic words issue. I'm sorry. I have two possibilities. Number one, maybe this is a repeat of Judge Owens, but can we allow them to withdraw the motion for affirm and recharacterize it? And number two, can we invite the government to file a motion for some reaffirmance, which they have done in well over three times as many of these cases? On one, as I was explaining with Judge Willett, I think the answer might be yes. I really wish that I guess the public defender's brief says something about an alternative remedy at the end of the first supplemental brief. I guess that could be construed as a withdrawal of the brief of the motion. I hesitated with Judge Willett for the same reason that once you have this kind of threshold to look at the relief request, it doesn't address the injury. Now we don't have jurisdiction, and we only have jurisdiction to determine our own jurisdiction. Whether the court can take ministerial actions like allowing the withdrawal of a motion predicate to that dismissal is really a matter for people with Article III commissions. I don't know. I think so. And certainly my sympathies are with Aguiar-Torres or any of the cases where these motions have been filed because the court, after all, is complicit in having induced them to be filed. And the second question I very clearly had an answer to, and I forgot your question. Can we invite the government to file its motion for some reaffirmance? Yes. Okay. So let me follow up on that. It seems like there's a consensus by counsel as well as by members of the court, but I want to make sure I understand this. If the government moves for the summary affirmance, that's totally cool, jurisdiction. Is that your position, sir? I think so. When it's unopposed. I don't think that there could be a circumstance where the government moves for summary affirmance and then the counsel for the appellant somehow files a merits brief or other, the kind of completion of the rate of error that says I also want affirmance. And that, I think, would be a problem. But an unopposed motion for summary affirmance I don't think is one from the government. Right. Just very simple. If the government moves a summary affirm, and, yeah, let's say Dr. Weiss says I'm not going to oppose that, there's jurisdiction there? I believe so. And that's because I think the mere filing of a notice of appeal carries with it the implicit request of a reversal and vacater. Let me ask my follow-up question then. Everybody refers to this as a standing case, an appellate standing case in particular. When do we determine standing? You determine it at the outset of the case, which is to say when the release has been requested. According to our cases, we analyze standing in district court at the time of the complaint and in appellate court, at least under our precedence, at the time of the notice of appeal. So all of this stuff we're talking about happens after. There's no way of, how do we determine all this when it hasn't happened yet for purposes of analyzing? For addressability, it can't be true that it's completed at the notice of appeal because there's been no relief requested. So in reality, for determining standing, there has to be a redressable injury, redressable by the relief requested. The mere filing of a notice of appeal requests no relief. And so you don't have the complete document, the complete complaint in error to use historical analogs until you get that request, which actually comes in the merits brief at the end of it when the party said what the appellate wants you to do. Or in this case, in the motion for summary affirms. I did think about this and whether it was mootness. I don't think it is mootness because the Supreme Court says redressability is determined by the relief requested. The notice of appeal by itself doesn't request relief. Counselor, let me ask you, insofar as redressability is concerned, obviously what's going on here, the reality of what's going on here, they want an opinion, an order, a decision from this court so they can move on to the Supreme Court. Massachusetts v. EPA says redressability doesn't require a complete removal of the injury so long as it provides some relief, some adjustment of the injury. A suspect opinion, as Judge Ho also mentioned a moment ago. But why isn't the request really here? We need this decision from you so we can move on. Isn't that redressing their injury? Isn't that more than just saying affirm us? It's affirm so that we can have something from which to seek a reassuring. So I have a couple answers. One is it's the single worst thing you could ask for. So in reality, the case getting dismissed is better, but also a stay is better. And reversal or vacater is still better than that. Why is better important? So long as it does somewhat redress their injury. Maybe we evaluate and do something different. And I am concerned about what you're saying and what Judge Odom first raised, that they really don't want to go to the Supreme Court at this stage. They want to see if somebody else gets it fixed. But regardless, it seems to me so long as it's somewhat redressing their injury. Massachusetts v. EPA would say some reduction, some adjustment of the injury would be sufficient. You can quote what that case said better than I just did. And that is the decision from this court from which they can then launch their next attack. I think a couple answers, Judge Southwick, if you'll indulge me. One is I've developed a new appreciation for Judge Higginson's COA line of questioning, which I think is pretty analogous to what you're talking about here. But the reality is they don't need a decision from this court to go to the Supreme Court of the United States. They can seek a writ of certiorari before judgment in the Court of Appeals and ask this court to stay. And they don't need anything. The fact is that this court doesn't like that procedure. But the court really does not like petitions asking for overruling of Almendarez-Torres. So I just don't think that this marginal procedural energy that you're talking about from an affirmance actually gets him anything that should be a constitutional moment for redressability. Following up on that, though, again, this is just because it sounds like you've got pretty good command of this area. The Supreme Court's decision in Plout where the court says we are not a batch of unconnected courts. We're one judicial department and textually only one Supreme Court. So isn't that sort of consistent with Judge Southwick's questions about we've got sort of waystation jurisdiction? I think the abstract statement as you said it is consistent. But the problem is, of course, I didn't find a case and the parties didn't cite the case where somebody took this kind of holistic view of the judicial system. I will say you can find cases, and this won't be a complete answer, but in the Senate Bill 8 fallout, there's all sorts of cases saying you can't get redressability from one court to another. And Halland, in the paragraph that I was talking about where I quoted the Franklin thing from Scalia, the paragraph before is about how somebody thought that there was redressability because a federal court might influence a state court. I don't think that's completely analogous because it's a unified federal system, as you pointed out. But I do think we should be careful with those kinds of statements. If he did choose, he being counsel, the single worst choice, would we still have power in the first instance to decide ineffective assistance? And I was just going to attach an amusement because my favorite book as a child was The Last Unicorn. And Schmendrick, you say he's a bumbling magician, but he actually pulls it off at the end, correct? He does indeed pull it off at the end. Magic, magic, do as you will, Judge Higginson. I think that he did choose the single worst option. Absolutely not would this be ineffective assistance given the kinds of things this court has said and the procedure this court adopted. No way could anybody say that what the defender did here fell below professional standards. If the court has no further questions, I'm done. Thank you, Mr. Mortora. Ms. Davidson, do you have time for rebuttal? Yes, thank you. First of all, Heredia, Holguin, and Campos-Serrano both indicate that the legal merits of challenging the term of supervised release are not moved simply based on deportation. To address Holland and Franklin and Windsor and also Judge Oldham's line of questioning, none of these cases that Amika cites import redressability in the way that he advocates. They do not define redressability as something that has to be newly and separately proved at each court of the moment. Holland and Franklin both indicate or both Justice Scalia and Franklin, which is imported into Holland, is talking about the power of the court, the constitutionally prescribed sphere of power to act. And Justice Scalia was saying in joining the president, the courts don't have that power. In both Holland and the other cases that Amika cites speak in terms of redressability as one of the tests private plaintiffs must prove to seek entry into the courts. And that's why I distinguished what Amika is arguing, for which there is no case law, with Friends of the Earth and Laid Law. Let me ask you about a later case. So this is West Virginia from 2022 Supreme Court of the United States, West Virginia versus EPA. The requirement of standing must be met by person seeking appellate review. Just as it must be met by persons appearing in courts of first instance, Supreme Court of the United States. So I don't understand how you can say, well, we don't have to really worry about standing in the Court of Appeals. It's right there. Now, maybe you want to say, well, as Judge Ho points out, we adjudicate standing at the time of the notice of appeal, to which my question is, let's take an even more recent case. This one is seven days old. This is from the Supreme Court's decision just last week. And I won't even try to pronounce the name of it. Wolfschleger is the respondent. Footnote five says this time of the filing rule concerns the state of things relevant to jurisdiction. That is the facts on the ground, not the claims pressed. So if the claims pressed change after the time of filing, then we address all of the standing requirements. The Supreme Court says at the time that the claims are pressed, the facts might be frozen. The claims pressed might change. So if somebody comes into court and says, I changed my mind. I wanted to win, but now I want to lose. How in the world would we say we still have jurisdiction to adjudicate that? Oh, sorry. We can't. We can't hear you, Ms. Davidson. Check, check. One, two. Okay. There's a lot to unpack there. And I think you drive home one of the problems that many courts have identified is that jurisdiction is thrown around loosely and with imprecision at times. I'm not saying that there's not standing or that standing doesn't have to persist. What Laidlaw did was more precisely unpack the test for initial standing for private plaintiffs invoking the power of the court versus once invoked, what happens with mootness. With regard to the most recent case, filing notice of appeal, seeking entry into the appellate court is a jurisdictional hurdle. And that was accomplished with the timely notice of appeal in this case. I really don't think there's any argument that this court has Article III jurisdiction over the direct criminal appeal of a defendant challenging his conviction or sentence. Let me put it this way. Imagine the plaintiff files a complaint and says, please enter judgment against me. Original complaint, you agree, obviously there's no redressability, no standing dismissed, correct? Not a trick question. Yeah, sure. Okay, so change the facts now. So now they file a complaint and they say no, in fact the defendant owes me $20, please give me $20. Now there's redressability, we all agree, standing is met, jurisdiction exists. They file an amended complaint two months later and say I've changed my mind, I would like to lose. Now they obviously have standing at the time of filing, but they change the pressing of the claims. Is there jurisdiction or not when they file the amended complaint that says I would like to lose, please enter judgment against me? I really don't think that's a good analogy, respectfully, because this is a criminal case. Okay, we're having trouble with the sound again. Counsel, would you mind answering the question first and then tell me why it's not a good analogy? I think that, sure, there would be, for a private plaintiff in a civil case, there's going to be difficulties with the pleading requirement in terms of whether or not they're stating a claim in the first place. But this is a criminal defendant. The criminal defendant did not initiate the court's Article III jurisdiction, the government did. And the government received a court-imposed judgment that convicted him to a term of imprisonment and supervised release. So he's timely filed a notice of appeal. That jurisdictionally clears a bar for appellate jurisdiction. And the case really turns on mootness, not whether or not regressibility, as amicus defines it, is imported into the stage. Ms. Ferenger, I'm wondering, do you agree that this is a rather novel issue? The question about Article III in this context? I mean, I'm assuming you would agree because you're participating in extensive dialogue here. So if you agree, I assume you're familiar with the principle of constitutional avoidance. And therefore, I'm wondering, why aren't you noting that if we have doubts about the constitutional issue, should we accept your request to withdraw the motion and submit a merits brief? Jones, I just want to clarify, your question is directed at me rather than the government? Yes. Oh, okay. Because it's the last line of your supplemental en banc reply brief, requesting the opportunity to withdraw the motion and submit a merits brief. I don't think that this is a novel Article III issue per se. I think that is because the court's procedure is how it wants to process, how it wants appellants to process their foreclosed, a foreclosed issue on appeal. It doesn't remove the case from the court's power to act. It could deny the motion for some reaffirmance. And there's no law that amicus has pointed to that magic words rule the day. In fact, the case law is contrary to that. Fulman v. Davis talks in terms of that there's no skill in pleading that rules the day on jurisdiction. Even Spencer v. Kimma talks about standing as reflected by the content of the record, not simply abearance. And so to say that this court lacks authority, constitutionally crafted sphere of authority to act on a defendant appellant's motion, there's just nothing that supports that. May I ask one question about, go back to Judge Jones' first question of the argument, which was about communicating with your client. I believe Judge Jones asked, when was the last time you spoke to your client? I would ask a slightly different question. With regard to this motion in particular, was this motion discussed with your client and explained to him that although he had a notice of appeal that had been filed on his behalf, that you were now going to file a motion to summary affirm to defeat his appeal? Was that explained to him and he agreed to it? I'm going to check, okay. Checking my mic first, okay. Judge Engelhardt, I respectfully want to push back on that because I don't think the content of my client communications are appropriate. Well, can you answer the question before you push back on it? I'm concerned about the question even inviting disclosure of what was discussed. That is really within the scope of attorney-client privilege, how we discussed his case or its strategy. The point is, in assessing a case, the court allows a procedure to preserve an issue. Does he know that this has been done? Yes. We file communications and provide copies of the filings that we file in court. Up until this point, for at least 10 years, and anecdotally, I believe it was longer, this procedure has been in place. In Article III, jurisdiction has never arisen. And I don't think it's proper to have arisen because it's a case-processing procedure, and that's within the court's authority and power to craft. It's not creating Article III jurisdiction, and it's not destroying Article III jurisdiction. So I see that I'm out of time. If there are no other questions, I ask that Mr. Aguilar-Torres' motion for summary judgment to be granted in line with the court's long-term procedure and practice. Alternatively, that he's allowed to withdraw the motion and submit a merits brief if the court finds that there is an Article III defect. Thank you. Thank you. We have your argument. We appreciate all the arguments in this case today, and we also note that Mr. Mortora participated as a friend of the court, and we appreciate your service to the court. This case is submitted. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.